# **EXHIBIT 19**

Pro Se Lawsuit: Plaintiff Joyce Goodwin

| | |
|---|---|
| Tennessee Department of Labor & Workforce Development<br>Appeal Tribunal<br>220 French Landing Drive, Suite 2B,<br>Nashville, TN 37243 | Appeal Decision<br><br>Claim Number:<br>2281588<br><br>Determination Number:<br>5637206<br><br>Appeal Filed By:<br>JOYCE GOODWIN<br><br>Appeal Filed Date:<br>02/05/2020<br><br>Appeal Tribunal Docket:<br>2020001722-AT |



Joyce A Goodwin
1779 Kirby Pkwy
#127
Germantown, TN 38138-0000

## APPEAL TRIBUNAL DECISION OF HEARING AUTHORITY

Mail Date: April 8, 2020

**Appellant**
Claimant/Job Seeker: JOYCE GOODWIN
Claimant address: 1779 KIRBY PKWY
#127
GERMANTOWN, TN 38138-0000
Social Security Number: XXX-XX-7844

**Appellee**
Employer: Methodist Healthcare
Employer address: Po Box 351567
Westminster, CO 80035

In regard to the appeal by JOYCE GOODWIN:

**SECTION OF LAW**
T.C.A. §50-7-303(a)(1)(A)(i). A claimant shall be disqualified for benefits if the administrator finds that the claimant has left the claimant's most recent work voluntarily without good cause connected with the claimant's work. The disqualification shall be for the duration of the ensuing period of unemployment and until the claimant has secured subsequent employment covered by an unemployment compensation law of this state, another state, or the United States, and was paid wages by the subsequent employment ten (10) times the claimant's weekly benefit amount.

T.C.A. §50-7-303(a)(2)(A). A claimant shall be disqualified for benefits if the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work, the disqualification shall be for the duration of the ensuing period of unemployment and until the claimant has secured subsequent employment covered by an unemployment compensation law of this state, another state, or the United States, and was paid wages by the subsequent employment ten (10) times the claimant's weekly benefit amount.

**ISSUES STATEMENT**
Tenn. Code Ann. § 50-7-303(a)(1)(A)(i). Whether the claimant left work voluntarily without good cause connected with the work.

Tenn. Code Ann § 50-7-303(a)(2)(A). Whether the claimant was discharged from work for misconduct connected with the work.

**CASE HISTORY**
On January 5, 2020, the Claimant, Joyce A. Goodwin, filed an initial claim for unemployment compensation benefits. On January 28, 2020, the Agency found that the Claimant was discharged from the Claimant's most recent employment with Methodist Healthcare Associate Relations for violating company policy and the Agency found work-related misconduct. In accordance with Tenn. Code Ann. § 50-7-303(a)(1) and Tenn. Code Ann. § 50-7-303(a)(2), the Claimant was disqualified from receiving unemployment compensation benefits until the Claimant has earned ten (10) times the Claimant's weekly benefit amount in covered employment. On February 5, 2020, the Claimant filed an appeal from the Agency's decision to the Appeals Tribunal. After due notice to all interested parties, a telephone hearing was scheduled for this case on February 24, 2020, at which both parties appeared, but the hearing was continued in order for the



AP-9   1 of 4      AF30F9FC-C3F3-4378-84B5-6DF963CE158E

Employer to serve copies of Exhibits on the Claimant's counsel. After due notice to all interested parties, a rescheduled telephone hearing was held on March 19, 2020. The Claimant appeared and testified, and was represented by Devon Gosnell, Attorney. The Employer appeared and was represented by Darryl Arbor, Director of Internal Audit, who testified. The hearing could not be completed because of technical difficulties and had to be continued. After due notice to all interested parties, a rescheduled telephone hearing was held on April 7, 2020, at which time the Claimant appeared and testified, and was represented by Devon Gosnell, Attorney. The Employer appeared and was represented by Darryl Arbor, Director of Internal Audit.

**FINDINGS OF FACT**

The Claimant's most recent work prior to filing this claim was as the Humanitarian Fund Coordinator for Methodist Healthcare Associate Relations from November 2, 2015 to January 7, 2020.

The Claimant was responsible for receiving and reviewing applications to the Employer's Humanitarian Fund and processing those applications for disbursement to needy individuals from the fund for those persons dealing with short-term but challenging life circumstances and events. The Claimant received the applications for disbursement, and a Committee met weekly and reviewed and approved the applications for disbursement of the funds prior to issuance of a check to the applicant. While the Employer had a System Policy that defined the established parameters for authorized disbursements from the Humanitarian Fund, the policy did not provide the specific documentation that was to be assembled and submitted with an application for a fund grant. The Humanitarian Fund Coordinator retained some discretion as to what supporting documentation would accompany the grant application that was submitted to the Committee for their approval.

On November 10, 2019, the Claimant was approached by a woman with a need about receiving a grant from the fund. The Claimant interviewed the woman and her husband on November 11, 2019. The woman's application for a grant was turned in to the Employer on November 13, 2019, and the application was submitted to the Committee for a review on November 14, 2019. The Employer cut a check to the applicant on November 19, 2019, and the applicant's husband picked up the check on November 18, 2019, telling the Claimant that his wife was in the hospital. On November 18, 2019, the Claimant called the female who was the applicant for the grant to check on her, because the applicant had entered the hospital. On the morning of November 19, 2019, the Claimant contacted the Employer's accountant to determine if the check had been cashed and was told the check had not been cashed. The Claimant asked the accountant to void the check, because the Claimant was concerned about the trustworthiness of the applicant's husband, who had picked up the check on November 18, 2019. The Claimant was concerned that the check might have been stolen based upon concerns that the applicant had expressed about her husband to the Claimant. The Employer investigated the incident regarding why the Claimant had requested that the check be voided, and interviewed the Claimant. The Employer was not satisfied with the consistency of the Claimant's explanation for why she had requested that the check to the applicant be voided. The Employer determined that the Claimant had not obtained adequate supporting documentation from the applicant for disbursement of the funds, and therefore, that the Claimant had mismanaged the funds. The Employer suspended the Claimant on December 5, 2019 and subsequently discharged the Claimant on January 7, 2020 for neglect of her duties, not performing her job adequately and exercising poor judgment in approving the applicant's request from the Humanitarian Funds.

**CONCLUSION OF LAW**

The Claimant's most recent work prior to filing this claim was as the Humanitarian Fund Coordinator for Methodist Healthcare Associate Relations from November 2, 2015 to January 7, 2020.

The Claimant was responsible for receiving and reviewing applications to the Employer's Humanitarian Fund and processing those applications for disbursement to needy individuals from the fund for those persons dealing with short-term but challenging life circumstances and events. The Claimant received the applications for disbursement, and a Committee met weekly and reviewed and approved the applications for disbursement of the funds prior to issuance of a check to the applicant. While the Employer had a System Policy that defined the established parameters for authorized disbursements from the Humanitarian Fund, the policy did not provide the specific documentation that was to be assembled and submitted with an application for a fund grant. The Humanitarian Fund Coordinator retained some discretion as to what supporting documentation would accompany the grant application that was submitted to the Committee for their approval.

On November 10, 2019, the Claimant was approached by a woman with a need about receiving a grant from the fund. The Claimant interviewed the woman and her husband on November 11, 2019. The woman's application for a grant was turned in to the Employer on November 13, 2019, and the application was submitted to the Committee for a review on November 14, 2019. The Employer cut a check to the applicant on November 19, 2019, and the applicant's husband picked up the check on November 18, 2019, telling the Claimant that his wife was in the hospital. On November 18, 2019, the Claimant called the female who was the applicant for the grant to check on her, because the applicant had entered the hospital. On the morning of November 19, 2019, the Claimant contacted the Employer's accountant to determine if the check had been cashed and was told the check had not been cashed. The Claimant asked the accountant to void the check, because the Claimant was concerned about the trustworthiness of the applicant's



husband, who had picked up the check on November 18, 2019. The Claimant was concerned that the check might have been stolen based upon concerns that the applicant had expressed about her husband to the Claimant. The Employer investigated the incident regarding why the Claimant had requested that the check be voided, and interviewed the Claimant. The Employer was not satisfied with the consistency of the Claimant's explanation for why she had requested that the check to the applicant be voided. The Employer determined that the Claimant had not obtained adequate supporting documentation from the applicant for disbursement of the funds, and therefore, that the Claimant had mismanaged the funds. The Employer suspended the Claimant on December 5, 2019 and subsequently discharged the Claimant on January 7, 2020 for neglect of her duties, not performing her job adequately and exercising poor judgment in approving the applicant's request from the Humanitarian Funds.

### ORDER
The Agency Decision is reversed. The Claimant is eligible for benefits under Tenn. Code Ann. §50-7-303(a)(2).

### POLICY REASONS
The Employer has failed to prove by the weight of the credible evidence that the Claimant materially breached a duty owed to the Employer that caused the Claimant's discharge. Therefore, the Claimant is eligible to receive unemployment compensation benefits.

Blair Morgan
Hearing Officer
Tennessee Department of Labor & Workforce Development

**Please see the last page of this document for important information about reopening the appeal and further appeal rights.**

## Important Information about Reopening the Appeal and Further Appeal Rights

### REOPENING APPEAL REQUESTS
If a party or his representative did not appear at the hearing, the person may request a reopening of the appeal. The request for reopening must list the reasons *in writing* why the failure to appear occurred. **The request to reopen must be received by the Appeals Tribunal within TEN DAYS of the date of the hearing,** as indicated on the first page of this notice. Reopening the appeal will be granted only if good cause is shown. See section below on where to submit reopen requests. All parties will be notified of the decision made on the reopening request in accordance with the delivery method you select in JOBS4TN.GOV.

### WHERE TO SUBMIT REOPEN APPEAL REQUESTS
Be sure to include your name, docket number, and daytime phone number where you can be reached. All correspondence should be sent to the Appeals Tribunal.

- Online: Login to JOBS4TN.GOV at www.jobs4tn.gov. From the JOBS4TN.GOV dashboard, click the Appeals Tab.
- Email: At.newappeals@tn.gov
- Postal mail: Tennessee Department of Labor & Workforce Development   **NOTE: Allow adequate time for delivery of postal mail.**
  Appeal Tribunal
  220 French Landing Dr, Suite 2B,
  Nashville, TN 37243-1002

### FURTHER APPEAL RIGHTS
The decision is final **unless an appeal is filed within 15 days of the mail date shown on the first page of this notice.** Be sure to include your name, docket number, and the reasons why you disagree with the Hearing Officer's decision. If possible, include a copy of the decision, as shown on the first page of this notice.

An appeal can be filed one of the following ways:

- Online: Login to www.jobs4tn.gov. From the JOBS4TN.GOV dashboard, click the *More Unemployment Services* link then select *Appeals* and follow directions.
- Postal mail: Tennessee Office of Administrative Review   **NOTE: Allow adequate time for delivery of postal mail.**
  220 French Landing Dr, Suite 2B,
  Nashville, TN 37243-1002

### WAIVER OF OVERPAYMENTS
The claimant may request a waiver of overpayments, if any, under T.C.A. § 50-7-303(d)(2) by filing a request, within ninety (90) days from the date the decision was mailed, to the Tennessee Department of Labor and Workforce Development, UI Recovery/Waiver Request Unit, P.O. Box 24150, Nashville, TN 37202-4150. **A waiver cannot be granted if the overpayment was found to be the fault of the claimant, or if the overpayment was found to be due to fraud.**

### ADDITIONAL INFORMATION
Claimants should continue to file for weekly benefits until a final appeal decision is made or they return to work full time. You will not be paid if you do not file for those weeks. Remember: If you return to work but you're not working full time, be sure to report your earnings each week when you file for benefits. For more information, refer to the Benefits Rights Information document, available on our Jobs4tn.gov website, or to the Frequently Asked Questions - Appeals section on our website.



AP-9   4 of 4            AF30F9FC-C3F3-4378-84B5-6DF963CE158E